# IN THE SUPREME COURT OF IOWA

No. 13–0204

Filed May 30, 2014

**TUNIS E. DEN HARTOG, SHIRLEY ANN SCHWEERTMAN, LEONARD G. LYBBERT, JAMES EDWARD SCHUMAN, MICHAEL J. MAC, MARY ELLEN MOLINARO, WILLIAM JAMES ROBERT,** and **MARK D. FISHER,**

      Appellants,

vs.

**CITY OF WATERLOO,**

      Appellee.

---

Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer, Judge.

Taxpayers appeal a district court ruling on the applicability of statutory notice and sale provisions to road right-of-way held by the City. **REVERSED AND REMANDED WITH INSTRUCTIONS.**

David R. Nagle, Waterloo, for appellants.

Ivan T. Webber and James R. Wainwright of Ahlers & Cooney, P.C., Des Moines, for appellee.

**HECHT, Justice.**

A municipality agreed to transfer to a residential developer land originally acquired for use as a road right-of-way. Taxpayers challenged in this civil action the legality of the proposed transfer, contending the municipality failed to follow statutory procedures for the sale of unused right-of-way. The district court interpreted the relevant statute, concluded the property in question was not unused right-of-way, and dismissed the case. Upon appellate review, we conclude the land in question is unused right-of-way and the municipality may therefore not sell or transfer it to the developer without first following the statutory procedure mandating notice to the present owners of adjacent property and to the persons who owned the land at the time it was acquired for road purposes. We therefore reverse the district court's decision and remand with instructions.

## I. Background Facts and Proceedings.

The State of Iowa acquired property in Black Hawk County for purposes of constructing a state highway in 1959. The highway had originally been planned as, and enough land had been acquired for, a four-lane project, but the highway was eventually constructed with just two lanes. In 1983, the state transferred control of the highway and attendant property to the City of Waterloo (the City), in accordance with the terms of Iowa Code chapter 306, entitled "Establishment, Alteration, and Vacation of Highways." After the transfer, the highway property became known as San Marnan Drive in Waterloo. The City has retained jurisdiction and control over the property in the years since and has maintained it with grading, mowing, and weed control.

The City has now indicated its intention to transfer the property to Sunnyside South Addition, LLC (Sunnyside), as part of a development

agreement. Under the terms of the agreement, Sunnyside proposes to relocate San Marnan Drive by reconstructing it approximately eighty feet south of its current position and intends to retain the property on which the current San Marnan Drive sits for purposes of residential construction. The City proposes to transfer the highway property to Sunnyside according to the agreement for the sum of $1.00.

Taxpaying residents of Waterloo (the taxpayers) became aware of and objected to the proposed transfer in 2011. They filed in the district court a petition for writ of mandamus and temporary injunction requesting postponement of the sale on the ground the City's proposed transaction failed to comply with certain appraisal, notice, right-of-first refusal, and public bid requirements set forth in chapter 306. The City denied the allegations and moved for summary judgment, contending the sale procedure of chapter 306 applies only to property acquired for highway purposes that has never been used as and is not currently used as a highway (or for related roadway purposes), and insisting the chapter is therefore inapplicable to the previously used and maintained property here. The taxpayers resisted, contending part of the property had never been used or developed and noting the City had indicated in a related legal proceeding the property *was* subject to the chapter 306 requirements.

The district court sought supplemental briefing. In response, the taxpayers added a contention that the chapter 306 requirements are applicable to both land acquired for highway purposes but never used, and land acquired for highway purposes and previously or currently in use, whenever the controlling entity proposes to sell it. The City maintained its position, contending the language of chapter 306 indicates it applies solely to property acquired, but never used, for

highway purposes. The district court denied the City's summary judgment motion and held a bench trial in January 2013.

After trial and a site visit, the court found "the entire subject property is used for public roadway purposes." Then, determining the chapter 306 requirements apply only to land not currently in use, the court concluded the requirements were inapplicable to the property at issue here and dismissed the taxpayers' petition.

The taxpayers appealed the district court decision and we retained the appeal.

## II. Scope of Review.

The parties assert our review is for errors at law. Because mandamus actions are triable in equity, however, our review is de novo. *Koenigs v. Mitchell Cnty. Bd. of Supervisors,* 659 N.W.2d 589, 592 (Iowa 2003). We review the district court's interpretation of statutory provisions for errors at law. *In re Estate of Whalen*, 827 N.W.2d 184, 187 (Iowa 2013).

## III. Discussion.

Section 306.23 of chapter 306 sets forth the specific procedural rights the taxpayers seek to invoke here. When an agency[1] in control of land "which is unused right-of-way" intends to sell the land, the section provides the agency must determine the fair market value of the land by independent appraisal and give notice of the intent to sell and the fair market value to both the previous owner of the land and the owner of the "adjacent land from which the" piece of land was originally purchased. *See* Iowa Code § 306.23(1) (2013). These individuals must then be given

---

[1]"Agency" is defined broadly in this context to mean "any governmental body which exercises jurisdiction over any road as provided in section 306.4." Iowa Code § 306.2(1) (2013).

the opportunity "to be heard and make offers within sixty days of the date the notice is mailed," and any offer equaling or exceeding the others and exceeding fair market value must "be given preference by the agency." *Id.* § 306.23(2). If no offers meeting these criteria are received, the provision directs the agency to "transfer the land for a public purpose or proceed with the sale of the property." *Id.* Section 306.22 sets forth specific "terms and conditions" for these sales, or alternatively, grants the agency authority to sell tracts for cash. *Id.* § 306.22(1) ("[T]he agency in control of the highway may sell the tract for cash."); *id.* § 306.22(2) ("The department may contract for the sale of any tract of land subject to the following terms and conditions: . . . .").

As noted, the parties dispute the meaning and import of the phrase "which is unused right-of-way" in section 306.23.[2] The City urges the phrase plainly refers narrowly to land not currently in use for roadway or related purposes. The taxpayers respond that section 306.23 is very clearly to be read in connection with section 306.22, which defines all "unused right-of-way" by implication in setting forth sale conditions for unused right-of-way and referring broadly to any land the agency adjudges "will not be used" for roadway purposes. *See* Iowa Code § 306.22 ("Sale of unused right-of-way."). The parties agree section 306.23 must incorporate the meaning of section 306.22, and the broad designation in section 306.22, the taxpayers contend, clearly reaches land currently in use so long as the agency has reached a determination

---

[2]The parties agree "right-of-way" in this context refers to the entire "area of land" reserved "for roadway purposes," and agree the area denoted here is coextensive with the area denoted by the word "road" in section 306.3. *See* Iowa Code § 306.3(7) (defining "Public road right-of-way"). "Road," for purposes of chapter 306, refers to the "entire width" of the "way or place" "open to the use of the public . . . for purposes of vehicular traffic." *Id.* § 306.3(8).

the land is no longer needed and will no longer be used for roadway purposes, as the City has here.

We have often explained we construe statutory phrases not by assessing solely words and phrases in isolation, but instead by incorporating considerations of the structure and purpose of the statute in its entirety. *In re Estate of Melby*, 841 N.W.2d 867, 879 (Iowa 2014). Consideration of the context in which words are used allows us to give them ordinary meanings best achieving the statute's purpose. *Id.* We look to related statutory provisions and our caselaw for these structural, linguistic, and purposive contextual cues. *Id.* at 879–80.

As a starting point here, we find it instructive chapter 306 is entitled "Establishment, Alteration, and Vacation of Highways," and very clearly sets forth provisions and procedures for establishing, altering, improving, closing, and vacating roads. *See, e.g.*, Iowa Code § 306.10 ("Power to establish, alter, or vacate."); *id.* § 306.18 ("Establishment."); *Hansell v. Massey*, 244 Iowa 969, 970, 59 N.W.2d 221, 221 (1953) (noting a secondary "road, if vacated, could have been reestablished . . . only by following the regular statutory procedure for establishing highways[]"). From these provisions, a clear picture of the procedural framework for agency action with respect to roadways emerges.

Section 306.10 grants an agency the "power, on its own motion, to alter or vacate and close any" road system, and similarly, "to establish new" roads as part of the road system it currently controls. Iowa Code § 306.10. In establishing a road, the agency "need not cause a hearing to be held . . . but may do so." *Id.* § 306.18. When vacating or closing any road or part thereof, by contrast, the agency must generally hold a hearing regarding the closing, and provide the requisite notice to all

"adjoining property owners," among other enumerated parties.[3]  *Id.* § 306.11 ("Hearing — place — date."); *id.* § 306.12 ("Notice — service."); *id.* § 306.13 ("Notice — requirements.").

Notably, the notice and hearing provisions for vacating and closing make specific reference to roads an agency intends to change or alter, as presumably many, if not most, instances of road alteration and relocation will involve both a vacation and closing of one roadway or piece of roadway, and an establishment, in a different location, of a new roadway or piece of roadway, much like the scenario the City proposes in the case before us.  *See id.* § 306.11 ("If the road to be vacated or *changed* is a [road spanning two counties, the counties acting jointly] shall fix a date for a hearing . . . ." (emphasis added)).  Our general assembly has required this hearing procedure before closing a roadway, we have long recognized, in part because "the owner of land abutting a highway may suffer special damage because of its vacation."  *Hansell*, 244 Iowa at 972, 59 N.W.2d at 223.  Similarly, we have explained, "the owner of land so situated that it can be reached by no convenient way other than the vacated road" may also suffer special damages as a result of the vacating and closing.  *Id.* at 973, 59 N.W.2d at 223.  The hearing, we have noted, protects those property interests "which cannot be taken from [the enumerated landowners] without compensation."  *Id.* at 972, 59 N.W.2d at 223.

At a hearing on vacation, all interested parties meeting the statute's prerequisites may be heard on their damages claims.  *Id.* § 306.14.  After the hearing on vacation, the agency is directed to "enter

---

[3]The agency need not hold a vacation hearing "[i]f the proposed vacation is of part of a road right-of-way held by easement and will not change the existing traveled portion of the road or deny access to the road by adjoining landowners."  Iowa Code § 306.11.

an order either dismissing the proceedings, or vacating and closing the road . . . in which event it shall determine and state in the order the amount of the damages allowed to each claimant." *Id.* § 306.16 ("Final order."). That order is then final, unless "rescinded as provided in section 306.17," which grants unsatisfied parties the right to appeal the agency's damages determinations in the district court. *Id.* § 306.16–.17. If the agency concludes the damages "as finally determined on appeal are excessive," the agency has the option of rescinding its order, and retaining jurisdiction and control over the road. *Id.* § 306.17. Otherwise, the road remains "vacat[ed] and clos[ed]," as provided by the order entered in section 306.16. *Id.* § 306.16.

Sections 306.22 and 306.23, which set forth procedures governing an agency's sales of all "unused right-of-way," must be read in the context of this statutory backdrop. *See id.* § 306.22 ("Sale of unused right-of-way."). The sale conditions and procedures are invoked, section 306.22 directs, when title to land "has been or may be acquired" for roadway purposes and "when in the judgment of the agency" the land "will not be used in connection" with roadway purposes. *Id.* As standard Iowa Department of Transportation practice and standard county practice reveals, the sale procedures will often follow a damages hearing regarding vacation, and the procedures recognize the interests of distinct sets of parties. *See, e.g.,* Iowa Dep't of Transp., *Instructional Memorandums to County Engineers*, I.M. No. 4.030, at 2 (2002), *available at* http://www.iowadot.gov/local_systems/publications/im/imtoc.pdf ("Vacated road right-of-way held by fee title may be sold under Iowa Code section 306.22 (unused right-of-way)."). *Compare* Iowa Code § 306.12 (granting hearing rights regarding vacation and closing of roadway to "adjoining property owners," adjoining utility companies, and county

boards of supervisors in control of the tract), *with id.* § 306.23(1) (granting right of notice of sale and right-of-first-refusal to adjacent property owner of unused right-of-way and to "person who owned the land at the time it was purchased") and *id.* § 306.24 ("Any sale of land as herein authorized . . . shall be upon the condition[] that the tract . . . so sold shall not be used . . . to the material damage of the adjacent owner."). The broad, backward-looking and future-oriented description of the land subject to designation as "unused" under section 306.22 for purposes of sale is instructive given the straightforward framework of chapter 306.

More specifically, given the procedure the agency must follow in vacating or relocating tracts used for roads or parts thereof, and given the resulting court order, which designates tracts previously used for roads or parts thereof "vacat[ed] and clos[ed]," we conclude those tracts having been subject to the procedure and subject to final order fit comfortably within the class of previously acquired land section 306.22 designates as "unused" for the agency's purposes going forward, regardless whether the tracts may have been used previously. That determination informs our conclusion the definition of "unused" cannot be as narrow as the City contends here. The qualification in section 306.22 that the agency must adjudge the land "will not be used in connection" with roadway purposes going forward need not have any bearing on the determination.[4] The qualification merely suggests in

---

[4]We note in many scenarios a determination the tract "will not be used" will have happened at some time prior and may implicate the statutory damages hearing procedure for abutting and adjacent owners, which might in turn result in a vacation order, which might in turn have the effect of satisfying the "unused" criterion of section 306.22. In cases where the agency concludes the damages awards are excessive, however, and retains jurisdiction over the tract, the final order is rescinded and the tract might then fail to satisfy the section 306.22 criteria.

some scenarios where land has been acquired or will be acquired, regardless whether the land has been previously used or through the statutory vacation procedure, the agency may determine the land will be used at some point in the future as a roadway, and in those instances the agency need not sell the tract.[5]  *Id.* § 306.22; *see also id.* § 306.38 (granting agency authority to rent previously acquired property pending future use).

Additional statutory cues bolster our conclusion that the tract the City proposes to transfer here qualifies as "unused" for purposes of the chapter 306 sale procedures.  First, section 306.22 indicates any sales made according to its terms will be subject to the possessory rights of certain utilities, who may continue in possession of those rights "in use at the time of the sale."  *Id.* § 306.22(3).  That language very clearly suggests tracts sold according to the terms of sections 306.22 and 306.23 might be in use, or may have previously been in use, at the time of the sale—at odds with the City's position these sections can only plausibly be read to apply to land not currently in use and never previously used.  *See id.*; *see also id.* § 306.19(6) (noting agency may determine it "necessary to relocate a utility facility" in the course of maintaining, relocating, establishing, or improving a road).

Second, when an agency has acquired property for use in connection with a roadway and determines the tract "is not immediately needed for such improvement," section 306.38 grants the agency the authority to "rent such land or buildings thereon" for fair market value.

---

[5]Alternatively, section 306.22 might suggest the agency *cannot* sell the tract in those instances, but that question is not before us today.  *See id.* § 306.22 (explaining agency "*may* sell the tract" when agency determines tract will not be used for roadway purposes without addressing what agency may do when it determines tract will be used (emphasis added)).

*Id.* § 306.38. This provision suggests, much like section 306.22(3), land acquired and held by the agency might already be developed or in use and may continue in that status until the agency makes some future determination regarding use, and gives no indication the tract's status at acquisition should affect the agency's obligations on disposition. Just as importantly for our purposes, section 306.38 clearly duplicates the fair market value principle articulated in section 306.23. This replication, we believe, constitutes persuasive evidence of specific purposes underlying the chapter 306 framework for agency action—namely, the promotion of fairness, as nearly as is practicable, for all affected interests in tract uses and transactions, and the protection of the financial interests, as nearly as is practicable, of the controlling entity and affiliated taxpayers by securing fair market value in these uses and transactions. *See, e.g., id.* § 306.15 ("After the road has been vacated and closed the board shall sell [properties acquired in connection with vacation] at the best attainable price."); *Bricker v. Iowa Cnty. Bd. of Supervisors*, 240 N.W.2d 686, 690 (Iowa 1976) ("We agree with petitioners that [section] 306.11 contemplates a genuine hearing, not a sham."); 1970 Op. Iowa Att'y Gen. No. 70-3-11 (Mar. 5, 1970), 1970 WL 207604, *2 ("Surely it would frustrate the purpose of the legislature in passing these particular statutes, if the board or commission in control of the particular highway or parcel could not exercise all reasonable means, within the framework of those conditions set forth in the laws, to secure a reasonable price for lands which were no longer needed for highway purposes and which could best be sold to the public."). Our determination the tract in question here meets the "unused" requirements of sections 306.22 and 306.23 promotes these purposes in implicating the notice and fair-market value procedures of section 306.23. *Cf.* Office of Right-of-Way,

Iowa Dep't of Transp., *Property Management Policy and Procedure Manual,* at 56 (2007), *available at* http://www.iowadot.gov/rightofway/ propertymanage/pm_manual.html ("The notice provisions of Iowa Code § 306.23 are mandatory.").

Finally, we note we are guided by the legislative history of section 306.22. Prior to 1974, section 306.22 designated as unused right-of-way, and granted the agency the power to sell, any tract "[which] is not now and will not hereafter be used in connection" with a roadway. *See* Iowa Code § 306.22 (1973). That language may have been narrower than the statutory language we construe today, in excluding from the category of "unused right-of-way" subject to the section 306.22 and 306.23 procedural requirements, at least superficially, those tracts currently in use.[6] The present statutory language makes no such specific reference to land currently in use, and thus we cannot conclude the tract in question here should escape the procedural requirements of sections 306.22 and 306.23.

Given the straightforward procedural framework for agency action set forth in chapter 306, the linguistic and structural cues in related provisions in chapter 306, the statutory purpose, and the legislative history of section 306.22, we cannot conclude the "unused right-of-way" designations of sections 306.22 and 306.23 are to be read narrowly to exclude any land currently maintained by the City for some purpose. We therefore conclude the district court erred in determining these provisions and their procedural requirements are inapplicable to the tract in question here.

---

[6]Perhaps an interpretive question would have arisen, whatever the state of development of the tract at the time, had the tract been through the statutory vacation and closing procedure and a final order had been entered vacating and closing the property.

**IV. Conclusion.**

We reverse the district court's decision dismissing the plaintiffs' petition and remand this case for entry of an order enjoining the City of Waterloo from selling or transferring the subject property without first following the procedures prescribed in Iowa Code section 306.23.

**REVERSED AND REMANDED WITH INSTRUCTIONS.**

All justices concur except Zager, J., who takes no part.