# IN THE SUPREME COURT OF IOWA

No. 15–1540

Filed March 10, 2017

Amended May 3, 2017

**TUNIS E. DEN HARTOG, SHIRLEY ANN SCHWEERTMAN, LEONARD G. LYBBERT, MARY ELLEN MOLINARO, WILLIAM JAMES ROBERT, AND MARK D. FISHER,**

Appellants,

vs.

**CITY OF WATERLOO, IOWA,**

Appellee,

SUNNYSIDE SOUTH ADDITION, LLC,

Intervenor.

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

Taxpayers challenge the district court's ruling finding a municipality was not in contempt of a court order forbidding it from selling certain property except in compliance with statutory requirements. **AFFIRMED AS MODIFIED.**

Dave Nagle, Waterloo, for appellants.

David Zellhoefer, Waterloo City Attorney, and Ivan T. Webber of Ahlers & Cooney, P.C., Des Moines, for appellee.

**CADY, Chief Justice.**

In this case, we must decide if we should hold a municipality in contempt of a court order that required it to dispose of certain property only in compliance with Iowa Code section 306.23 (2014). The municipality promulgated notices that gave a development company preferential bidding on the property even though it was not a prior or adjacent landowner, gave that same development company a bid credit for the improvements it had already made to the property, described the land as delineated in the plat filed for the contested development, and used a backdated valuation. Following a hearing, the district court found the notices did not satisfy the requirements of section 306.23, but nevertheless held the municipality's actions did not rise to the level of contempt. The taxpayers appealed. On appeal, we affirm. We also address additional arguments presented to, but not ruled on by, the district court. We conclude the municipality violated the injunction but agree the record does not establish beyond a reasonable doubt the municipality acted with the requisite willfulness to establish contempt.

## I. Factual Background and Proceedings.

This case is before us for the second time. The factual background can be summarized from our earlier opinion, as follows:

> The State of Iowa acquired property in Black Hawk County for purposes of constructing a state highway in 1959. The highway had originally been planned as, and enough land had been acquired for, a four-lane project, but the highway was eventually constructed with just two lanes. In 1983, the state transferred control of the highway and attendant property to the City of Waterloo (the City), in accordance with the terms of Iowa Code chapter 306, entitled "Establishment, Alteration, and Vacation of Highways." After the transfer, the highway property became known as San Marnan Drive in Waterloo. The City has retained jurisdiction and control over the property in the years since and has maintained it with grading, mowing, and weed control.

The City has now indicated its intention to transfer the property to Sunnyside South Addition, LLC (Sunnyside), as part of a development agreement. Under the terms of the agreement, Sunnyside proposes to relocate San Marnan Drive by reconstructing it approximately eighty feet south of its current position and intends to retain the property on which the current San Marnan Drive sits for purposes of residential construction. The City proposes to transfer the highway property to Sunnyside according to the agreement for the sum of $1.00.

Taxpaying residents of Waterloo . . . became aware of and objected to the proposed transfer in 2011. They filed in the district court a petition for writ of mandamus and temporary injunction requesting postponement of the sale on the ground the City's proposed transaction failed to comply with certain appraisal, notice, right-of-first refusal, and public bid requirements set forth in chapter 306.

*Den Hartog v. City of Waterloo*, 847 N.W.2d 459, 460–61 (Iowa 2014).

The dispute was submitted to the district court for a resolution. The fighting issue was whether a statutory preference given to certain persons when unused right-of-way land is intended to be sold apply not only to land acquired for highway purposes but never used, but also land used for highway purposes that were later discontinued. Following a hearing, the district court held the statutory preference procedures did not apply to the sale of the right-of-way land in this case and dismissed the motion to enjoin the sale and the petition for writ of mandamus.

The taxpayers filed an appeal from the district court decision. Around the same time, the City entered into a contract to sell the right-of-way land to Sunnyside. It also entered into a development agreement with Sunnyside. Under the agreement, Sunnyside was required to develop the unused right-of-way, which ran next to a country club and golf course, into lots for residential development. The City also gave Sunnyside a special warranty deed to the land. During the pendency of the appeal, the City platted the land for the development, and Sunnyside relocated San Marnan Drive to the south. Sunnyside also graded the

land for the housing development and installed curbs, gutters, storm sewers, utilities, and took other action necessary to complete the development site for home construction.

In June 2014, we reversed the decision of the district court. We held the statutory sales preference did apply to land formerly used for highway purposes. We remanded the case to the district court to enter the requested injunction against the City. On July 7, 2014, the district court entered an order enjoining the City "from selling or transferring the property in this proceeding without first following the procedures prescribed in Iowa Code section 306.23."

The City subsequently moved to dissolve the injunction. It did not assert the sale of the property to Sunnyside was complete. Instead, it asserted that it desired to sell the land and proposed to do so by first giving notice of the intended sale consistent with the requirements of the preference statute. On February 20, 2015, the district court denied the motion to dissolve the injunction.

The City then proceeded to give the notices of the intended sale under the preference statute. The taxpayers filed an application to find the City in contempt of court for noncompliance with the statutory requirements of the notices. They also sought a temporary restraining order to prevent any sale.

On June 4, 2015, the district court held the notices of sale sent by the City failed to comply with the statutory sales preference. However, it found the deficiencies in the notices were not willful and did not amount to contempt. It further found a restraining order was unnecessary because the prior injunction remained in effect.

The taxpayers appealed. On appeal, they claim the notices sent by the City failed to comply with the governing statute in four ways and that

the noncompliance constituted a willful and wanton disregard for the injunction entered on July 7, 2014. The taxpayers also claim the district court erred in failing to address each claim of noncompliance. The City argued no contempt could occur without a final sale. It also argued that any noncompliance with Iowa Code section 306.23 was not contemptuous.

## II. Standard of Review.

Despite the vast procedural background of this case, the fundamental question now presented is whether the district court erred in failing to find the City in contempt of court for sending notices that did not comply with Iowa Code section 306.23. We permit the direct appeal of a dismissal of an application for contempt. *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992).

> Our cases impose a special standard of review of the facts in contempt cases. If it is claimed that a ruling is not supported by substantial evidence, "we examine the evidence, not de novo, but to assure ourselves that proper proof supports the judgment." "The exact extent to which we may go in deciding questions of fact from the record is vaguely defined; it lies in a shadow land, a 'twilight zone,' whose boundaries do not admit of definite charting." The finding of contempt must be established by proof beyond a reasonable doubt.

*Id.* (first quoting *Palmer Coll. of Chiropractic v. Iowa Dist. Ct.*, 412 N.W.2d 617, 619 (Iowa 1987); then quoting *Watson v. Charlton*, 243 Iowa 80, 92, 50 N.W.2d 605, 612 (1951)); *see also Patterson v. Keleher*, 365 N.W.2d 22, 24 (Iowa 1985) ("Our review is not de novo; while we give much weight to the trial court's findings of fact, we are not bound by them.").

> Since proof beyond a reasonable doubt must be established for a finding of contempt, substantial evidence to support such a finding is "such evidence as could convince a rational trier of fact that the alleged contemnor is guilty of contempt beyond a reasonable doubt."

*Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010) (quoting *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995)). "We review the district court's conclusions of law for errors at law." *Id.*; *see also Lipcamon*, 483 N.W.2d at 606–07 ("We are not bound by the trial court's conclusions of law and may inquire into whether it applied erroneous rules of law that materially affected its decision."). "We are authorized . . . to find contempt 'notwithstanding the fact that the district judge found that a contempt had not been committed.' " *Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430–31 (Iowa 1968) (quoting *Lake v. Wolfe*, 108 Iowa 184, 186, 78 N.W. 811, 811 (1899)).

### III.  Contempt of Court.

"Illegal resistance to any order" of the court is a contemptuous act. Iowa Code § 665.2(3). However, "[r]esistance to or violation of an order cannot be considered contempt of court unless it is willful." *Reis*, 787 N.W.2d at 68. Thus, "[c]ontempt actions are adjudicated to determine whether the alleged contemner acted in willful disobedience of a court order beyond a reasonable doubt." *City of Dubuque v. Iowa Dist. Ct.*, 725 N.W.2d 449, 452 (Iowa 2006).

The party alleging contempt bears the initial burden of proving "a duty to obey a court order" and a "willful[] fail[ure] to perform that duty." *Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). If the party makes this showing, "the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* Disobedience is willful when it is

> conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Reis*, 787 N.W.2d at 68 (quoting *Amro v. Iowa Dist. Ct.*, 429 N.W.2d 135, 140 (Iowa 1988)). However, "[a] failure to follow a court order is not willful if a contemner shows the order was indefinite or that the contemner was unable to comply with the order." *Ary*, 735 N.W.2d at 624. The interpretation of an order's language is a question of law. *See Zimmermann v. Iowa Dist. Ct.*, 480 N.W.2d 70, 74 (Iowa 1992).

> In construing [an] injunction, effect should be given to every word, if possible, to give the injunction as a whole a consistent and reasonable meaning. Effect should also "be given to that which is clearly implied as well as that which is expressed."

*Bear v. Iowa Dist. Ct.*, 540 N.W.2d 439, 441 (Iowa 1995) (citation omitted) (quoting *In re Marriage of Lawson*, 409 N.W.2d 181, 182 (Iowa 1987)). Our review is of "the spirit as well as the letter of the injunction to determine if its intent has been honestly and fairly obeyed." *Id.* (quoting *Burnett*, 160 N.W.2d at 431); *see also Matlock v. Weets*, 531 N.W.2d 118, 124 (Iowa 1995).

**A. Court Order.** The district court order prohibits the City "from selling or transferring the property . . . without first following the procedures prescribed in Iowa Code Section 306.23." The City asserts the order only prohibits the City from completing a sale in violation of the statute, not from attempting to sell the property in violation of the statute. However, the phrase "from selling or transferring" is written in the present tense. Thus, the statutory requirements are part of the process that must be performed in "selling or transferring" the land. Accordingly, the injunction encompasses efforts to sell the land in compliance with the statute, not merely the completed sale. We proceed to consider the statutory requirements that must be followed by the City in selling the land.

**B. Statutory Requirements.** Under Iowa law, the governmental agency in control of land that is an unused right-of-way may sell it for cash.[1] Iowa Code § 306.22. We have held this statute applies both to land acquired for highway purposes, but never used, and to land acquired and used for highway purposes that are discontinued. *Den Hartog*, 847 N.W.2d at 465–66. The law, however, gives a sales preference to two classes of persons. It gives a preference to the person who is the "present owner of adjacent land from which the tract, parcel, piece of land, or part thereof, was originally purchased or condemned for highway purposes." Iowa Code § 306.23(1). It also gives a preference to the person who owned the land at the time it was acquired. *Id.* The agency must give these persons an opportunity to purchase the land before proceeding with the sale. *Id.* § 306.23(2).

The statutory sales preference makes it possible for land taken for highway purposes to be returned to the particular tract of land or to the particular owner from which it was acquired. Thus, the "present owner of adjacent land from which" the unused tract or unused part of a tract controlled by the agency "was originally purchased or condemned" refers to present owners of land that lies adjacent to the unused right-of-way because the right-of-way was acquired from that land. The "person who owned the land" at the time it was acquired would also be the "present

---

[1]It appears only the Iowa Department of Transportation (DOT) may sell the land on an installment contract. Section 306.22(2) authorizes "[t]he department" to "contract for the sale of any tract of land." The statute is clear that "[t]he department" refers to the DOT. *See* Iowa Code § 306.2(3). Any "agency," on the other hand, may sell the land for cash. *See id.* § 306.22(1). An "agency" is "any governmental body which exercises jurisdiction over any road." *Id.* § 306.2(1). "When the legislature has defined words in a statute—that is, when the legislature has opted to 'act as its own lexicographer'—those definitions bind us." *In re J.C.*, 857 N.W.2d 495, 500 (Iowa 2014) (quoting *State v. Fischer*, 785 N.W.2d 697, 702 (Iowa 2010)).

owner of adjacent land" if the person who owned the land at the time it was acquired still owned the tract of land from which the right-of-way was acquired. *See* Op. Iowa Att'y Gen. No. 97–11–1 (Nov. 4, 1997), 1997 WL 816849, at *2 (finding the Act required the DOT to offer a last previous owner the opportunity to buy back just that particular piece of land it acquired from that owner); *see also* Office of Right of Way, Iowa Dep't of Transp., *Property Management Manual* 29 (March 2016) (defining "adjacent owner" for purposes of Iowa Code section 306.23).

The purpose of this statute is consistent with the purpose of Iowa Code section 6B.56, which created a right of first refusal for condemnees and was enacted at the same time section 306.23 was amended to add the original-owner preference. *See* 1997 Iowa Acts ch. 149, §§ 1, 2 (codified at Iowa Code § 6B.56 and § 306.23 (1999)). The original statutory preference for adjacent landowners was enacted in 1934. *See* 1934 Iowa Acts ch. 8, § 2 (codified at Iowa Code § 4755-f2 (1935)). The statute prefers restoration of unused rights-of-way to either the original tract or original owner from which it was acquired before selling it to another person. *See* Iowa Code § 306.23(1)–(2) (2014).

The sales preference operates by requiring the agency to send notice of the agency's intent to sell the land to the two classes of persons entitled to preference. *See* Iowa Code § 306.23(1). The notice must identify the name and address of any other person to whom the notice was sent and state "the fair market value of the land based on an appraisal by an independent appraiser." *Id.*

The notice gives the two classes of persons an opportunity "to be heard and to make offers within sixty days" of the time the notice is given for the tract, parcel, or piece of land to be sold. *Id.* § 306.23(2). An offer that equals or exceeds the amount of any other offer received and equals

or exceeds the fair market value is given preference by the agency. *Id.* If the agency receives no offers within the sixty-day period or if the offers do not equal or exceed the fair market value of the land, the agency is permitted to proceed with its intended sale for cash.

**C. Compliance with the Statutory Requirements.** The taxpayers claim the notices sent by the City were deficient in four ways. The district court did not expressly rule on each of these alleged failings. However, the taxpayers preserved error for our review by filing a motion to amend or enlarge. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002).

First, the taxpayers claim the notices were deficient because, among others entitled to notice, the City included Sunnyside as a preferential buyer within the "present owner of adjacent land" category. Without this status, Sunnyside does not qualify for notice since it was clearly not an owner of the right-of-way at the time it was acquired. *See* Iowa Code § 306.23(1) (noting the only two ownership interests entitled to notice). However, the City makes no claim on appeal that Sunnyside is a present owner of land adjacent to the right-of-way from which the right-of-way was acquired. Any claim of ownership by Sunnyside derived from a sale of the right-of-way land from the City did not make Sunnyside the present owner of land adjacent to the right-of-way. Thus, the City should not have sent notices to Sunnyside.

Second, the taxpayers claim the notices did not comply with the statute because they gave Sunnyside a bid credit. We need not address this claim because the record in this case does not support a finding that Sunnyside qualified as a preferential bidder under the statute.

Third, the taxpayers claim the notices were deficient because right-of-way properties intended to be sold by the City were described in the

notices by using the platted descriptions recorded during the pendency of the first appeal. The preference statute does not specifically require the selling agency to describe the land intended to be sold, but a description would be implicit in the requirement to give notice of the sale. A description would be sufficient if it reasonably notified those entitled to notice of the land intended to be sold. Normally, land that has been platted provides a reasonable description. *See City of Clinton v. Owners of Prop. Situated Within Certain Described Boundaries*, 191 N.W.2d 671, 674–75 (Iowa 1971) (noting a description may be sufficient if it reasonably identifies the land). Thus, the descriptions here were sufficient.

Finally, the taxpayers claim the notices were deficient because the City identified the fair market value of the right-of-way land in the notices prior to the time the land was improved by Sunnyside. Again, the statute does not specifically identify the time for the valuation to take place. However, the statutory-notice process implies the fair market value would be the value at or near the time the notice of impending sale is given. Accordingly, the fair market value in this case would include the value of the improvements made to the land by Sunnyside prior to the notices. *See Den Hartog*, 847 N.W.2d at 465 (noting one of the "purposes underlying the chapter 306 framework" is to protect the City and its taxpayers by attaining the best price for the land). Thus, the notices must state the present fair market value of the land to be sold. Any preferential offer would need to equal or exceed the fair market value of the land as improved by Sunnyside. If no such offers are received, the City may then proceed to confirm its prior sale to Sunnyside.

**D. Willful Violations.** The final question is the City's culpability. To reiterate, we ask whether the City acted with willful disobedience. *See Reis*, 787 N.W.2d at 68. Disobedience is willful when it is

> conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not.

*Id.* (quoting *Amro*, 429 N.W.2d at 140).

The taxpayers rely on testimony establishing the City's actions were far out of the norm for the typical disposal of right-of-way. They point to the obvious nature of some of the violations and assert that is sufficient evidence of the requisite mental state. The City attributed any failings to the complicated circumstances. The district court found the taxpayers failed to prove willful disobedience beyond a reasonable doubt. In responding to this appeal, the City expands on its earlier arguments, arguing there is a lack of evidence of intent and that even if its acts were contemptuous, it should be given the opportunity to purge itself of contempt.

We agree with the district court. Based on this record, the taxpayers have not met their high burden of proving the City acted contemptuously beyond a reasonable doubt. While some aspects of the notices are particularly troubling, we recognize the limited interpretive guidance available on this seldom-cited statute. However, now that we have ruled on each of the faults of the notices identified by the taxpayers, we expect future notices will be in compliance with Iowa Code section 306.23.

It cannot go unnoticed that the sale of the right-of-way land and compliance with the statutory preference has been complicated by the prior sale of the land to Sunnyside and the subsequent development of

the land by Sunnyside into residential lots during the pendency of the first appeal. Yet, the sole issue presented in this appeal involves the actions of the City in attempting to comply with the statute under these complex circumstances. Under the course of litigation pursued in this case, any such issues of Sunnyside's legal or equitable rights in the land would not likely be ripe until such time as a prior or adjacent owner utilized its sale preference established under the statute. *See Taft v. Iowa Dist. Ct.*, 879 N.W.2d 634, 638 (Iowa 2016) (noting we generally do not resolve hypothetical controversies).

## IV. Conclusion.

We conclude substantial evidence supports the finding of the district court that the City has not acted contemptuously in failing to comply with the preference requirements of Iowa Code section 306.23 at this point in the proceedings. We affirm the decision of the district court with the additional guidance laid out above.

**AFFIRMED AS MODIFIED.**

All justices concur except Zager, J., who takes no part.