# IN THE SUPREME COURT OF IOWA

No. 18–1201

Filed April 26, 2019

**TUNIS E. DEN HARTOG, SHIRLEY ANN SCHWEERTMAN, LEONARD G. LYBBERT, MARY ELLEN MOLINARO, WILLIAM JAMES ROBERT,** and **MARK D. FISHER,**

Appellants,

vs.

**CITY OF WATERLOO, IOWA,**

Appellee.

- - - - - - - - - - - - - - - - - - - - - - -

**SUNNYSIDE SOUTH ADDITION, LLC,**

Intervenor-Appellee,

vs.

**CITY OF WATERLOO, IOWA,**

Intervenor-Appellant.

---

Appeal from the Iowa District Court for Black Hawk County, Richard D. Stochl, Judge.

Taxpayers appeal district court ruling dissolving injunction and denying sanctions for sale of land from discontinued right-of-way. **AFFIRMED.**

Dave Nagle, Waterloo, for appellants.

Kristine Stone of Ahlers & Cooney, P.C., Des Moines, and David Zellhoefer, City Attorney, for appellee City of Waterloo, Iowa.

David L. Riley of Swisher & Cohrt, P.L.C., Waterloo, for intervenor-appellee Sunnyside South Addition, LLC.

**WATERMAN, Justice.**

This case returns to our court a third time. *See Den Hartog v. City of Waterloo* (*Den Hartog I*), 847 N.W.2d 459 (Iowa 2014); *Den Hartog v. City of Waterloo* (*Den Hartog II*), 891 N.W.2d 430 (Iowa 2017). In this latest appeal, we revisit whether the City of Waterloo complied with Iowa Code section 306.23 (2018) to transfer land from an unused right-of-way to a developer of a residential subdivision. The statute provides a preference of sale to the original owners and adjacent owners of the right-of-way and imposes notice and appraisal requirements to help get the best price. The plaintiffs challenging the transfer are adjacent landowners and taxpayers who allege the City violated the statutory requirements.[1] The district court dissolved an injunction that had precluded the sale after ruling that the City ultimately complied with section 306.23. The district court refused to hold the City in contempt. The taxpayers appealed. The district court later dismissed the taxpayers' mandamus claim and application for sanctions, and the taxpayers did not appeal from that ruling. We retained the taxpayers' appeal but do not address the mandamus and sanctions ruling that was not appealed.

Upon our review, we affirm the district court. The City's appraiser used a permissible method to determine the fair market value of the property, and the taxpayers failed to show the City's notices or bidding requirements violated section 306.23. Accordingly, the district court properly lifted its injunction and denied sanctions, including contempt.

---

[1]The developer argues that the Molinaro estate lacks standing because a prior ruling affirmed on appeal determined its property is not adjacent to the unused right-of-way. *See Molinaro v. City of Waterloo*, No. 12–0930, 2013 WL 2145983, at *3 (Iowa Ct. App. May 15, 2013). The district court did not reach the standing issue in its ruling under review in the present appeal, and the City does not challenge the estate's standing. We elect to decide the merits. *See Richards v. Iowa Dep't of Revenue*, 414 N.W.2d 344, 349 (Iowa 1987) (noting standing objections may be waived).

## I. Background Facts and Proceedings.

We repeat our overview of this litigation:

> The State of Iowa acquired property in Black Hawk County for purposes of constructing a state highway in 1959. The highway had originally been planned as, and enough land had been acquired for, a four-lane project, but the highway was eventually constructed with just two lanes. In 1983, the state transferred control of the highway and attendant property to the City of Waterloo (the City), in accordance with the terms of Iowa Code chapter 306, entitled "Establishment, Alteration, and Vacation of Highways." After the transfer, the highway property became known as San Marnan Drive in Waterloo. The City has retained jurisdiction and control over the property in the years since and has maintained it with grading, mowing, and weed control.

> The City has now indicated its intention to transfer the property to Sunnyside South Addition, LLC (Sunnyside), as part of a development agreement. Under the terms of the agreement, Sunnyside proposes to relocate San Marnan Drive by reconstructing it approximately eighty feet south of its current position and intends to retain the property on which the current San Marnan Drive sits for purposes of residential construction. The City proposes to transfer the highway property to Sunnyside according to the agreement for the sum of $1.00.

> Taxpaying residents of Waterloo (the taxpayers) became aware of and objected to the proposed transfer in 2011. They filed in the district court a petition for writ of mandamus and temporary injunction requesting postponement of the sale on the ground the City's proposed transaction failed to comply with certain appraisal, notice, right-of-first refusal, and public bid requirements set forth in chapter 306.

*Den Hartog I*, 847 N.W.2d at 460–61.

In *Den Hartog I*,

> [t]he fighting issue was whether a statutory preference given to certain persons when unused right-of-way land is intended to be sold appl[ies] not only to land acquired for highway purposes but never used, but also land used for highway purposes that were later discontinued.

*Den Hartog II*, 891 N.W.2d at 434. "[T]he district court held the statutory preference procedures did not apply to the sale of the right-of-way land in this case and dismissed the motion to enjoin the sale and the petition for

writ of mandamus." *Id.* The taxpayers appealed. While the first appeal was pending,

> the City entered into a contract to sell the right-of-way land to Sunnyside. It also entered into a development agreement with Sunnyside. Under the agreement, Sunnyside was required to develop the unused right-of-way, which ran next to a country club and golf course, into lots for residential development. The City also gave Sunnyside a special warranty deed to the land. During the pendency of the appeal, the City platted the land for the development, and Sunnyside relocated San Marnan Drive to the south. Sunnyside also graded the land for the housing development and installed curbs, gutters, storm sewers, utilities, and took other action necessary to complete the development site for home construction.

*Id.*

We reversed the district court and held "the statutory sales preference did apply to land formerly used for highway purposes." *Id.* We remanded the case to the district court to impose an injunction. *Id.* On remand, the district court entered an injunction prohibiting "the City 'from selling or transferring the property in this proceeding without first following the procedures prescribed in Iowa Code section 306.23.' " *Id.*

In 2015, the City "proceeded to give the notices of the intended sale under the preference statute. [In response,] [t]he taxpayers filed an application to find the City in contempt of court for noncompliance with the statutory requirements of the notices." *Id.* at 434–35. The district court found that the City violated the notice requirement of the statutory sales preference in section 306.23, but "it found the deficiencies in the notices were not willful and did not amount to contempt." *Id.* at 435.

In the second appeal, the taxpayers argued that the notices the City sent were deficient in four ways. First, the City sent a notice to Sunnyside, although it was not "a present owner of land adjacent to the right-of-way from which the right-of-way was acquired." *Id.* at 438. We concluded that

"the City should not have sent notices to Sunnyside" because "a sale of the right-of-way land from the City did not make Sunnyside the present owner of land adjacent to the right-of-way." *Id.*

Second, the City gave Sunnyside a bid credit, but we did "not address this claim because the record . . . d[id] not support a finding that Sunnyside qualified as a preferential bidder under the statute." *Id.*

Third, the taxpayers claimed that the descriptions of the property to be sold were deficient, but we rejected that assertion because the "statute does not specifically require the selling agency to describe the land intended to be sold," and the description that the City did provide was reasonable. *Id.*

Fourth, the taxpayers claimed that the notices were deficient because the City used "the fair market value of the right-of-way land in the notices prior to the time the land was improved by Sunnyside." *Id.* We agreed with the taxpayers and found that

> the statutory-notice process implies the fair market value would be the value at or near the time the notice of impending sale is given. Accordingly, the fair market value in this case would include the value of the improvements made to the land by Sunnyside prior to the notices.

*Id.*

Although we determined that the City violated statutory requirements, we held that "the taxpayers [had] not met their high burden of proving the City acted contemptuously beyond a reasonable doubt." *Id.* at 439. We noted that "[w]hile some aspects of the notices are particularly troubling," there was "substantial evidence support[ing] the finding of the district court that the City ha[d] not acted contemptuously in failing to comply with the preference requirements of Iowa Code section 306.23." *Id.* We acknowledged that the City had "limited interpretive guidance" at the

time it sent the notices, while we emphasized that "we expect future notices will be in compliance with Iowa Code section 306.23." *Id.*

Following *Den Hartog II*, the City in April 2017 obtained a new independent appraisal from James Herink. The appraisal report described his qualifications and experience as follows,

> James A. Herink is a Certified General Real Property Appraiser currently certified by the State of Iowa.
>
> Mr. Herink has been appraising residential and multi-family properties for 13 years. He is a graduate of Denver University, with a Bachelor's Degree in Journalism. He is currently taking courses from the Appraisal Institute and working towards a future designation. He successfully achieved his General Certification in August of 2012.
>
> The appraiser has appraised retail properties, light industrial, mini-storage, warehouses and multi-family properties in the past nine years and is familiar with the processes of valuation. The appraiser is seeking guidance from other knowledgeable persons within Rally Appraisal who have experience with valuation of this type as well.

Herink determined the fair market value of the property was $1,825,000. In order to assign value to each of the four individual parcels, Herink allocated the combined value pro rata among the tracts by their size. Herink made two assumptions: that there was clear title to the property and that each of the four individual owners were willing to accept a pro rata share of the land if the property were sold as one parcel. Herink noted that his appraisal was not done in a manner that would allow an individual owner to buy back his or her tract alone. Herink also noted that had the parcels been individually appraised, their value would have been significantly less.

After Herink's appraisal, the City sent out the required notices by certified mail, held a public hearing, and filed an application to dissolve the injunction. In this round of notices, the City of Waterloo was included as an adjacent landowner and the notice required interested bidders to

deposit the full amount of the bid, with preference given to bids meeting or exceeding the land's fair market value. Prior notices only required a $1000 deposit. The City reserved the right to reject all bids.

In response to the notices, the City received no offers equal to or exceeding the land's fair market value. The Waterloo City Council held hearings on July 10 and 17 to discuss any proposed bids and the potential transaction with Sunnyside. None of the plaintiff–taxpayers attended the hearing, and no one objected to the approval of the sale to Sunnyside at the July meeting. On September 11, the City and Sunnyside reached an agreement under which the property would be transferred to Sunnyside by special warranty deed for one dollar.

On September 25, the City moved to dissolve the injunction. On October 4, the taxpayers filed an application for order to show cause. A hearing was scheduled for March 29, 2018. On the eve of the hearing, the taxpayers filed an application for sanctions and a writ of mandamus under Iowa Code section 661.15. The parties agreed that the district court would not address the late filing at the March 29 hearing. At the hearing, the taxpayers argued that the City had (1) once again violated the notice, bidding, and appraisal requirements of Iowa Code section 306.23; and (2) violated the injunction. The taxpayers argued the City should be held in contempt.

On June 14, the district court ruled that the City complied with the requirements of Iowa Code section 306.23. The court dissolved the injunction. The City promptly moved to dismiss the taxpayers' application for sanctions and relief and an application for fines for violation of the writ of mandamus. The City argued that the June 14 ruling mooted the taxpayers' March 28 mandamus claim. On July 12, the taxpayers filed their notice of appeal of the June 14 ruling. On July 25, the district court

denied the taxpayers' application for sanctions and mandamus claim. No appeal was filed from the July 25 ruling.

We retained the taxpayers' July 12 appeal of the June 14 ruling.

## II. Scope of Review.

The primary issue on appeal is the City's compliance with the requirements of Iowa Code section 306.23. "We review the district court's interpretation of statutory provisions for errors at law." *Den Hartog I*, 847 N.W.2d at 461.

We review the district court's decision to vacate an injunction for abuse of discretion. *State v. Krogmann*, 804 N.W.2d 518, 523 (Iowa 2011); *see also Wood Bros. Thresher Co. v. Eicher*, 231 Iowa 530, 559, 1 N.W.2d 655, 660 (1942) ("[T]he dissolving of an injunction[] rests largely in the sound discretion of the court, dependent upon the circumstances of the particular case."). A court may vacate an injunction when it "no longer [has] a factual basis." *Helmkamp v. Clark Ready Mix Co.*, 249 N.W.2d 655, 656 (Iowa 1977); *see also Bear v. Iowa Dist. Ct.*, 540 N.W.2d 439, 441 (Iowa 1995) (holding that the court had the authority to vacate an injunction "if, over time, there has been a substantial change in the facts or law"). "[W]e will not generally interfere with the district court decision unless the discretion has been abused or the decision violates some principle of equity." *Max 100 L.C. v. Iowa Realty Co.*, 621 N.W.2d 178, 180 (Iowa 2001).

We reiterate the standard of review for rulings in contempt cases:

> Our cases impose a special standard of review of the facts in contempt cases. If it is claimed that a ruling is not supported by substantial evidence, "we examine the evidence, not de novo, but to assure ourselves that proper proof supports the judgment." "The exact extent to which we may go in deciding questions of fact from the record is vaguely defined; it lies in a shadow land, a 'twilight zone,' whose boundaries do

not admit of definite charting." The finding of contempt must be established by proof beyond a reasonable doubt.

*Den Hartog II*, 891 N.W.2d at 435 (quoting *State v. Lipcamon*, 483 N.W.2d 605, 606 (Iowa 1992)); *see also Patterson v. Keleher*, 365 N.W.2d 22, 24 (Iowa 1985) ("Our review is not de novo; while we give much weight to the trial court's findings of fact, we are not bound by them.").

> Since proof beyond a reasonable doubt must be established for a finding of contempt, substantial evidence to support such a finding is "such evidence as could convince a rational trier of fact that the alleged contemnor is guilty of contempt beyond a reasonable doubt."

*Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010) (quoting *In re Marriage of Jacobo*, 526 N.W.2d 859, 866 (Iowa 1995)).

### III.  Analysis.

We must decide whether the district court erred by rejecting the taxpayers' challenges to the City's proposed transfer of the unused right-of-way.  The taxpayers allege the City failed to comply with the notice, bidding, and appraisal requirements of Iowa Code section 306.23.  We determine the district court correctly rejected their challenges.  Our determination is fatal to the taxpayers' claims for sanctions and contempt. We begin our analysis with the governing statute.

**A. Iowa Code Section 306.23.**  The Iowa Code provides the roadmap government entities must follow when disposing of unused highway right-of-way land:

> 1. The agency in control of a tract, parcel, or piece of land, or part thereof, which is unused right-of-way shall send by certified mail to the last known address of the present owner of adjacent land from which the tract, parcel, piece of land, or part thereof, was originally purchased or condemned for highway purposes, and to the person who owned the land at the time it was purchased or condemned for highway purposes, notice of the agency's intent to sell the land, the name and address of any other person to whom a notice was

sent, and the fair market value of the real property based upon an appraisal by an independent appraiser.

      2. The notice shall give an opportunity to the present owner of adjacent property and to the person who owned the land at the time it was purchased or condemned for highway purposes to be heard and make offers within sixty days of the date the notice is mailed for the tract, parcel, or piece of land to be sold. An offer which equals or exceeds in amount any other offer received and which equals or exceeds the fair market value of the property shall be given preference by the agency in control of the land. If no offers are received within sixty days or if no offer equals or exceeds the fair market value of the land, the agency shall transfer the land for a public purpose or proceed with the sale of the property.

      3. For the purposes of this section, "*public purpose*" means the transfer to a state agency or a city, county, or other political subdivision for a public purpose.

Iowa Code § 306.23.

We have "recognize[d] the limited interpretive guidance available on this seldom-cited statute." *Den Hartog II*, 891 N.W.2d at 439. We noted that the purposes underlying chapter 306 are

the promotion of fairness, as nearly as is practicable, for all affected interests in tract uses and transactions, and the protection of the financial interests, as nearly as is practicable, of the controlling entity and affiliated taxpayers by securing fair market value in these uses and transactions.

*Den Hartog I*, 847 N.W.2d at 465; *see also* Iowa Code § 306.15 ("After the road has been vacated and closed the board shall sell the [land] at the best attainable price.").

We answered several questions in our prior opinions in this protracted litigation. We determined that the "statute applies both to land acquired for highway purposes, but never used, and to land acquired and used for highway purposes that are discontinued." *Den Hartog II*, 891 N.W.2d at 437. We clarified the procedural steps that government entities must take to comply with the statute's notice requirement. *Id.* We concluded that "present owner[s] of land adjacent to the right-of-way" as

well as the original owners are entitled to notice of the sale. *Id.* at 437–38. We also concluded that fair market value is determined "at or near the time the notice of impending sale is given" and must include improvements. *Id.* at 438. This third appeal raises new issues as to the City's compliance.

**B. The City's Compliance with Iowa Code Section 306.23.** The taxpayers argue the City's sale of the unused right-of-way violated section 306.23 because the City used an improper valuation method to determine the fair market value of the property, placed unnecessary impediments in the way of potential buyers, and listed improper parties on the notices. We address each issue in turn.

1. *Appraisal method.* The City used the Herink appraisal to set the fair market value of the land. We must determine whether the district court committed reversible error by rejecting the taxpayers' challenge to that appraisal. We previously observed that "[w]hen an agency in control of land 'which is unused right-of-way' intends to sell the land, . . . the agency must determine the fair market value of the land by independent appraisal." *Den Hartog I,* 847 N.W.2d at 461 (quoting Iowa Code § 306.23(1)).

> [T]he statute does not specifically identify the time for the valuation to take place. However, the statutory-notice process implies the fair market value would be the value at or near the time the notice of impending sale is given.

*Den Hartog II,* 891 N.W.2d at 438. Thus, "the fair market value in this case would include the value of the improvements made to the land by Sunnyside prior to the notices" and "[a]ny preferential offer would need to equal or exceed the fair market value of the land as improved by Sunnyside." *Id.*

In this third appeal, the taxpayers argue that Herink's appraisal method was in error because each parcel should have been appraised for its individual value standing alone, not as a part of a larger tract developed for a residential subdivision. Herink is a general real property appraiser certified by the State of Iowa and has been appraising residential and multifamily properties for thirteen years. He allocated the value of the entire parcel into four tracts based on the acreage of each of the tracts. As a result, the taxpayers argue, the City's appraiser placed a significantly higher value on the land.

Iowa Code section 306.23 does not mandate a particular appraisal method. The statute requires only that the notice include "the fair market value of the real property based upon an appraisal by an independent appraiser." Iowa Code § 306.23(1). As the district court noted,

> [t]he City hired an independent appraiser who arrived at the fair market value using appropriate standards. While plaintiffs may not agree with the values, this court finds the appraisal method appropriate under the circumstances and consistent with the law of this case.

We agree with the district court.

The taxpayers acknowledge there are various methods that an independent appraiser may use to comply with the statute. In 2015, the taxpayers objected because the City's appraisal did not account for improvements to the property, thus the taxpayers argued the appraisal was too low. Now the taxpayers argue that the City's independent appraisal—which accounted for prior improvements Sunnyside made—is too high and the method used to arrive at the value was improper.

The fair market value of the property is a question of fact. The parties offered competing appraisals. The district court as trier of fact

found the Herink appraisal credible as a basis for determining the fair market value of the property at issue. We find no reversible error.

2. *Other perceived impediments to preferential buyers.* The taxpayers argue that the City violated Iowa Code section 306.23 by placing "unreasonable and arbitrary impediments to preferential buyer[s] seeking to purchase any of the subject parcels," listing the City as an adjacent owner to the property, requiring a 100% deposit to bid on the property, and retaining the right to reject bids.

The district court correctly found that "[t]he City is an adjacent land owner. The fact they are listed as such has no bearing on the appropriateness of the notice." Indeed, the district court noted that the taxpayers "would be claiming the notices were defective because of the omission" if the City did not list itself on the notices. Even if the City were not an adjacent landowner, the taxpayers failed to show an extraneous notice caused any harm or deterred any bidders.

The taxpayers present a more credible challenge to the City's requirement that bidders deposit the full amount of the bid, which seemingly would deter bidding. The City received no bids. The taxpayers, however, offered no evidence showing bids were deterred by this deposit requirement. Nor do the taxpayers cite any authority prohibiting a full value bid deposit requirement, and we found none. To the contrary, the record in this case shows that the Iowa Department of Transportation (IDOT) has required full-bid deposits when selling unused State-owned rights-of-way. Commentators have recognized that cities may require deposits or other security for bids. 10 Eugene McQuillin, *The Law of Municipal Corporations* § 29:65, at 674–77 (3d ed. 2017 rev. vol.) ("As a guaranty that they will meet the requirements of their bids, bidders for public contracts frequently are required to accompany their bids with a

deposit or other security in a prescribed amount and form. Such a requirement is valid, and, if not complied with, a bid may be rejected." (Footnotes omitted.)). As the district court noted, "The statute does not address how bids are [to] be received or what deposit requirements the city can impose." We will not read into the statute a prohibition on full-bid deposits the legislature did not include.

We also conclude the City's express reservation of a right to reject bids did not violate Iowa Code section 306.23. The taxpayers identify no bidder deterred by the City's asserted but unexercised right to reject bidders, nor do they cite any authority precluding a right to reject bids. The record reflects that the IDOT itself retains that right in its sale of unused rights-of-way. Our court of appeals previously recognized that government entities enjoy the discretion to reject all bids and solicit new bids on a contract. *Dickinson Co. v. City of Des Moines*, 347 N.W.2d 436, 440 (Iowa Ct. App. 1984); *see also J.L. Manta, Inc. v. Braun*, 393 N.W.2d 490, 493 (Minn. 1986) ("Even in the absence of a constitutional or legislative reservation, courts have generally recognized the right to reject all bids where, as here, the invitation to bid expressly reserved the right of rejection.").

We affirm the district court's ruling that the City complied with Iowa Code section 306.23. This determination is fatal to the taxpayers' contempt claim and motion for sanctions premised on the City's noncompliance.

**C. The Taxpayers' Mandamus Claim.** We must decide whether this appeal encompasses the taxpayers' mandamus claim brought under Iowa Code section 661.15.[2] The taxpayers raised a mandamus claim for

---

[2]Iowa Code section 661.15 provides, in mandamus proceedings,

the first time in their application for sanctions filed March 28, 2018, the day before the long-scheduled hearing. The district court's ruling dissolving the injunction was filed on June 14. That ruling did not reach the mandamus claim. On July 12, the taxpayers filed their notice of appeal. The district court subsequently denied the application for sanctions and mandamus relief on July 25. The taxpayers did not file a separate notice of appeal for the denial of their mandamus claim and application for sanctions.

We conclude their July 12 appeal of the June 14 ruling does not encompass the separate ruling filed after the notice of appeal. We construe the district court's ruling on the application for sanctions and mandamus to be an independent, collateral ruling that was separately appealable. *See Bd. of Water Works Trs. v. City of Des Moines*, 469 N.W.2d 700, 702 (Iowa 1991) (holding motion for sanctions is a collateral and independent claim separately appealable). The taxpayers' failure to file a separate notice of appeal from the July 25 ruling precludes our appellate review. *See* Iowa R. App. P. 6.101(1)(*b*) (requiring notice of appeal to be filed "within 30 days *after* the filing of the final order or judgment" (emphasis added)); *State v. Olsen*, 794 N.W.2d 285, 289 (Iowa 2011) (holding failure to appeal cost award within thirty days precluded judicial review).

---

The court may, upon application of the plaintiff, besides or instead of proceeding against the defendant by attachment, direct that the act required to be done may be done by the plaintiff or some other person appointed by the court, at the expense of the defendant, and, upon the act being done, the amount of such expense may be ascertained by the court, or by a referee appointed by the court, and the court may render judgment for the amount of the expense and cost, and enforce payment thereof by execution.

Iowa Code § 661.15.

In any event, the claim for sanctions and mandamus fails on the merits given our affirmance of the ruling that the City complied with Iowa Code section 306.23.

**IV. Disposition.**

For these reasons, we affirm the district court judgment.

**AFFIRMED.**