# IN THE COURT OF APPEALS OF IOWA

No. 17-1808
Filed July 5, 2018

**ARTHUR L. DAY,**
Petition-Appellant/Cross-Appellee,

**vs.**

**MISTY L. ANDERSON,**
Respondent-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Allamakee County, Richard D. Stochl, Judge.

Arthur Day appeals and Misty Anderson cross-appeals from the order modifying the terms of the decree respecting the custody of their child. **AFFIRMED IN PART, REVERSED IN PART.**

Nicholas T. Larson of Larson Law Office, PLLC, Osage, for appellant.

Laura J. Parrish of Miller, Pearson, Gloe, Burns, Beatty & Parrish, P.L.C., Decorah, for appellee.

Considered by Danilson, C.J., and Mullins and McDonald, JJ.

**DANILSON, Chief Judge.**

Arthur Day appeals and Misty Anderson cross-appeals from the order modifying the terms of the decree[1] respecting the custody of their child, G.D. Day maintains G.D. should be placed in his physical care, or, in the alternative, the district court should have denied Anderson's request to modify the shared-care schedule. Day also asserts the court improperly modified other provisions of the decree. Day contends the court abused its discretion in refusing to admit exhibits at trial depicting text messages Day obtained from Anderson's iPad. Day also challenges both the district court's determination that Anderson was not in contempt and the order that Day pay $600 toward Anderson's attorney fees due to his unsuccessful contempt action. On cross-appeal, Anderson asserts the court should have granted her request to modify the decree respecting G.D.'s schooling and requests appellate attorney fees.

Finding no error in the district court's evidentiary rulings; determination to maintain shared care; and modification of the provisions of the decree respecting the shared-care schedule, the right of first refusal, and G.D.'s schooling, we affirm. We reverse the district court's modification of the decree's tax provisions. We also reverse the court's award of attorney fees to Anderson based on her successful defense to the contempt action. We deny Anderson's request for appellate attorney fees.

---

[1] Because this is an equity action, we use the term decree throughout this opinion to refer to the order approving stipulation filed July 7, 2014.

## I. Background Facts & Proceedings.

Day and Anderson are the parents of G.D., who was born in 2008 and was eight years old at the time of the modification trial. After the parties ended their relationship, Day filed a petition for custody in 2013.[2] A decree approving the parties' stipulated custody agreement was entered on July 7, 2014. Under the decree, the parties had joint legal custody and shared physical care of G.D. They divided time with G.D. on a two-day, two-day, three-day schedule.

As was the case before the decree, Day remained living in Postville at the time of the modification trial. Day works in Osage and commutes approximately seventy-five miles each way to work. Day stated the current shared-care schedule allows him to stay late in Osage to meet with clients on the days he does not have G.D. Day's mother lives in Postville and picks G.D. up from school and provides after-school care for G.D. on the days when G.D. is with Day.

At the time of the modification trial, Anderson was living in Decorah. She explained that although she still owned a home in Postville, she had moved to live with her fiancé full-time in Decorah. Anderson also works in Decorah, having changed jobs since the time of the decree.

Anderson filed a petition for modification on April 27, 2016, requesting the court to change the shared-care schedule to an alternating weekly schedule and seeking modification of the provision requiring G.D. to remain living and attending school in the Postville School District. Day requested physical care in an amended

---

[2] Day and Anderson were never married.

answer and counterclaim filed June 29, 2017. The modification trial was held on July 26, 2017.

After trial but before the district court's order on modification was filed, Anderson enrolled G.D. in the Decorah School District. Day filed an application for rule to show cause, alleging Anderson was in contempt for enrolling G.D. in a school district other than Postville.

In its September 19, 2017 ruling, the district court modified the decree to provide for an alternating weekly shared-care schedule, eliminated the decree's right-of-first-refusal provision, and modified the provision respecting tax exemptions. The court also modified the decree by lifting the requirement that Anderson and G.D. reside within the Postville School District, but did not modify the requirement that G.D. attend school in Postville. The court denied Day's request for physical care. The court also dismissed Day's application for rule to show cause, and awarded Anderson $600 in attorney fees for having to defend the contempt action. Day appeals and Anderson cross-appeals.

## II. Evidentiary Rulings.

Day asserts the district court improperly refused to admit proposed Exhibits 15, 16, and 17 at the modification trial. These exhibits included text messages Day obtained from Anderson's iPad, which G.D. was allowed to use and, unbeknownst to Anderson, had brought to Day's home.

We review the district court's evidentiary rulings for an abuse of discretion. *Heinz v. Heinz*, 653 N.W.2d 334, 338 (Iowa 2002). "An abuse of discretion exists when the court exercises its discretion 'on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *Id.* (citation omitted).

Exhibit 15 is a text exchange between Anderson and a friend discussing Anderson's relationship with her fiancé. In one of the messages, Anderson's friend referred to a time when Anderson's fiancé "got drunk and was abusive." Exhibit 16 is also a text exchange between Anderson and a friend discussing Anderson's difficulties agreeing with Day on swim lessons for G.D. Exhibit 17 appears to be a text exchange between Anderson and a romantic partner.

Day stated he happened to see the text messages on Anderson's iPad, which was left open after G.D. went to bed. However, Anderson credibly testified the iPad was programmed to lock after five minutes and was not set to synch with the text messages from her phone. Thus, Anderson explained someone would need to enter a password to gain access to the iPad and would have had to change the setting to be able to access her personal text messages.[3]

Day argues the court abused its discretion in refusing to admit Exhibits 15, 16, and 17 at trial. We recognize in equitable proceedings all evidence offered must ordinarily be received, subject to any objection made, in order to preserve the evidence for the record. *Leo v. Leo*, 213 N.W.2d 495, 497–98 (Iowa 1973). In this fashion, the record is complete on appeal in order for the appellate court to conduct a de novo review, and it permits the appellate courts to decide the case on the record without the need for a remand. *Id.* at 498. However, here we have been provided the exhibits, and on our review of the exhibits, we find they have

---

[3] At trial, the court determined:

> I don't find [Day]'s description of how he found these on the iPad to be credible. I find that he searched through an iPad that belonged to [Anderson] and obtained documents for use in this litigation that he should not have obtained. They are not admitted and there will be no testimony about their content.

very little relevance.[4]  More importantly, Day cannot show he was prejudiced by the failure to admit the exhibits at trial.  *See* Iowa R. Evid. 5.103(a) ("A party may claim error in a ruling to admit or exclude evidence only if the error affects a substantial right of the party . . . .").  As to the exhibits, the district court stated, "I have read all three of them. . . .  Even if admitted, I do not find that they carry any relevant information that would merit any consideration of a modification of custody."  The allegations Day seeks to show by admission of these exhibits— violence in Anderson's relationship and alcohol use—are unsupported by any other evidence in the record.  We do not find the court's refusal to admit Exhibits 15, 16, and 17 was an abuse of its discretion.

## III. Modification.

Day also challenges the district court's determination that placing physical care of G.D. with Day was not appropriate, and the court's modification of the decree respecting the shared-care schedule, the right of first refusal, and the allocation of G.D.'s tax exemption.

We review proceedings to modify custodial provisions de novo.  *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa 2002).  "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us."  *Id.*

> Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child.

---

[4] "Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action."  Iowa R. Evid. 5.401.

*Id.* Where a parent seeks to modify physical care of the child, "the petitioning parent has a heavy burden and must show the ability to offer superior care." *Id.* "[A]s in all cases involving the question of custody, our first consideration in proceedings to modify custody is the best interest of the child[ ]." *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa 1996). The objective is to "place the child[ ] in the environment most likely to bring them to health, both physically and mentally, and to social maturity." *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007).

First, we find the district court properly denied Day's request for physical care. On our review of the record, it cannot be shown that Day is the superior parent. Day has not provided any evidence to support his contention Anderson cannot provide a safe environment for G.D. other than the allegations discussed briefly in the text-message proposed exhibits, which were not admitted at trial. It is clear both parents greatly care for G.D. and have provided more than adequate nurturing of G.D., both physically and mentally. We find no circumstances warranting placement of physical care with Day.

Next, we conclude a substantial change of circumstances exists to support the district court's modification of the shared-care schedule. Anderson argued modification was necessary because the parties' difficulty communicating constituted a substantial change in circumstances and could only be remedied by changing the shared-care schedule to a week-on-week-off arrangement. The district court held:

> The parties have had some difficulty communicating as it relates to their current arrangement. The court finds most of their disagreements have been over small, petty issues. The difficulties have revolved around picking the child up from day care and use of

the other parent as a care provider when the custodial parent is not available. . . . There does appear to be a level of inflexibility in [Day] that makes the current arrangement difficult. . . . Communication only appears to fail when there is a request to change the terms of the stipulation. [Day] believes [Anderson] is trying to demonstrate that the stipulation does not work. The court finds otherwise. Co-parenting requires cooperation and flexibility. A written stipulation cannot anticipate and control every situation. [Day]'s demands of strict compliance have caused communication problems and discord between the parties. Switching multiple times per week has not been in the best interests of G.D.

The evidence indicates the parties have had disagreements and confusion revolving around the two-day, two-day, three-day shared-care schedule. This type of schedule requires parents to communicate often and presents more opportunities for dispute when there are so many exchanges of custody during each one-week period. Anderson did not anticipate that Day would demand such rigid adherence to the shared-care schedule, at times requesting an exchange of G.D. for only a matter of hours where the regular shared-care schedule did not seamlessly overlap with special holiday hours. At trial, Anderson explained she desired a weekly shared-care schedule because she had "conversations with [G.D.] and [he said] that he feels like he goes—in his words, goes back and forth so much. I just feel like weeks at a time would provide him the opportunity to get settled in one place before he has to go back."

We agree a weekly shared-care schedule is in G.D.'s best interests. It provides G.D. more stability and creates fewer opportunities for dispute and confusion between the parents during exchanges.

We also find the parents' difficulties communicating constitute a substantial change of circumstances warranting elimination of the right-of-first-refusal

provision[5] of the decree. The parties often had arguments arising from failure to provide the other the option to care for G.D. when the custodial parent was unable to do so. This was especially confusing under the circumstances of this case because Day's mother plays such a large part in helping to care for G.D. when G.D. is in Day's care. Although in many cases the right of first refusal is beneficial to the child and preferred by the parents, here it has been a source of confusion and stress. We do not find the court's elimination of the provision to help relieve the stress between the parties was improper.

Last, we find the district court's modification of the tax provision based on Anderson's possible upcoming marriage was improper. Anderson was engaged but not yet married at the time of the modification trial. *See In re Marriage of Schlenker*, 300 N.W.2d 164, 165 (Iowa 1981) ("[T]rial courts should make final disposition of cases on the circumstances then existing."). Additionally, inasmuch as individual tax exemptions no longer exist under the new federal tax code, the allocation of the dependent exemption may be a non-issue going forward. *See* 26 U.S.C. § 151. We reverse on this issue.

**IV. Cross-Appeal.**

On cross-appeal, Anderson challenges the district court's order, arguing the decree should have been modified to allow G.D. to attend school in Decorah. Although Anderson has moved to Decorah, Day remains living in Postville. Day stated it is very important to him that G.D. attend school in Postville. Although the

---

[5] As explained by the district court, the right-of-first-refusal is a provision in the decree requiring "the parties to use the other parent as a first provider for care of G.D. when they are unavailable due to work or other commitments."

district court modified the decree to allow Anderson and G.D. to reside outside of the Postville School District, Anderson's move does not require transferring G.D. to Decorah schools. Anderson has not shown how attending Decorah will benefit G.D.'s best interests over attending Postville. Either way, G.D. will be required to commute the distance from Decorah to Postville, or vice versa, on the weeks where he is living with the custodial parent outside of the school district. G.D. has excelled in school and has friends in Postville. There is no evidence showing G.D. must attend school in Decorah to further his best interests.

**V. Contempt.**

After the modification trial, but prior to the district court's ruling on modification, Anderson registered G.D. for school in Decorah. Day contends Anderson was in contempt of the decree because she registered G.D. for school in Decorah despite the provision of the decree requiring G.D. to attend school in Postville. However, Anderson explained at the contempt hearing that she was simply registering G.D. in the Decorah school system to be prepared in the event the court ruled G.D. could attend school in Decorah. Anderson's registration of G.D. for school in Decorah caused confusion, but did not prevent G.D. from being registered to attend school in Postville. G.D. began attending school in Postville at the start of the school year as planned. Anderson stated she understood G.D. was to attend school in Postville at the start of the school year if the court's modification order was not yet entered.

A trial court has "broad discretion" in deciding on whether to impose punishment for contempt in a particular case and "unless this discretion is grossly abused, the [trial court's] decision must stand." *In re Marriage of Swan*, 526

N.W.2d 320, 327 (Iowa 1995) (alteration in original) (citation omitted). "'Illegal resistance to any order' of the court is a contemptuous act." *Den Hartog v. City of Waterloo*, 891 N.W.2d 430, 436 (Iowa 2017) (citation omitted). "However, '[r]esistance to or violation of an order cannot be considered contempt of court unless it is willful.'" *Id.* (alteration in original) (citation omitted). "The party alleging contempt bears the initial burden of proving 'a duty to obey a court order' and a 'willful[ ] fail[ure] to perform that duty.'" *Id.* (alteration in original) (citation omitted).

Anderson's registration of G.D. in Decorah schools did not constitute willful contempt. The decree required G.D. to attend school in Postville, and he did. Anderson offered a reasonable explanation for registering G.D. for school in Decorah. She credibly explained she enrolled G.D. in Decorah schools in the event she was successful in this litigation, and she did not intend to take G.D. to school in Decorah unless the court permitted such a result. G.D. has attended school in Postville just as the decree required. We find the district court properly dismissed the contempt action as the evidence did not rise to the level of proof beyond a reasonable doubt.

## VI. Attorney Fees.

Day contends the district court did not have discretion to award Anderson attorney fees for successfully defending Day's contempt action. We review the district court's attorney-fee award for an abuse of discretion. *In re Marriage of Sullins*, 715 N.W.2d 242, 255 (Iowa 2006).

Section 600B.37A provides:

> If an action is brought on the grounds that a party to an order made pursuant to this chapter is in default or contempt of the order, and the court determines that the party is in default or contempt of

the order, the costs of the proceeding, including reasonable attorney fees, may be taxed against that party.

Section 598.23—the similar code section in dissolution cases—provides:

When an action for . . . order to show cause . . . is brought on the grounds that a party to the decree is in default or contempt of the decree, and the court determines that the party is in default or contempt of the decree, the costs of the proceeding, including reasonable attorney's fees, may be taxed against that party.

We have previously held, "the district court did not have discretion to award attorney fees to [a party] for successfully defending the contempt action brought against him." *In re Marriage of Nicola*, No. 15-1210, 2016 WL 902655, at *6 (Iowa Ct. App. Mar. 9, 2016). This is because, "[t]hough the district court has considerable discretion in awarding attorney fees, the power to do so 'must come clearly within the terms of [a] statute or agreement.'" *In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa Ct. App. Dec. 24, 2014) (quoting *Van Sloun v. Agans Bros., Inc.*, 778 N.W.2d 174, 182 (Iowa 2010)). In *Shaman*, we similarly held "section 597.24 does not permit courts to award attorney fees to a party defending against a contempt action." 2014 WL 7343748, at *2.

Because section 600B.37A provides only for an award of attorney fees where an applicant has successfully shown the other party to be in contempt, the district court did not have discretion to award attorney fees to Anderson for successfully defending the contempt action. We therefore reverse the attorney-fee award.

## VII. Appellate Attorney Fees.

On cross-appeal, Anderson requests appellate attorney fees. "An award of appellate attorney fees is not a matter of right but rests within our discretion." *In*

*re Marriage of Applegate*, 567 N.W.2d 671, 675 (Iowa Ct. App. 1997). "In determining whether to award appellate attorney fees, we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Id.* Given the circumstances of this case and Anderson's lack of success on cross-appeal, we do not find an award of appellate attorney fees is appropriate.

**VIII. Conclusion.**

We find the district court did not abuse its discretion in not admitting exhibits 15, 16, and 17 at trial. We also conclude the district court properly denied Day's request to modify physical care, properly modified the shared-care schedule, and properly modified the decree by eliminating the first right of refusal. We reverse the district court's decision to modify the tax-exemption provision. We also conclude the district court did not have discretion to award attorney fees to Anderson for successfully defending the contempt action, and reverse the award of attorney fees. We do not award attorney fees to Anderson on appeal.

**AFFIRMED IN PART, REVERSED IN PART.**