# IN THE COURT OF APPEALS OF IOWA

No. 21-0171
Filed September 22, 2021

IN RE THE MARRIAGE OF JAY S. SENATRA
AND AMY J. SENATRA

Upon the Petition of
**JAY S. SENATRA,**
    Petitioner-Appellant,

**And Concerning**
**AMY J. SENATRA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Muscatine County, Jeffrey D. Bert, Judge.

The petitioner appeals the district court's denial of his application for rule to show cause, claiming respondent was in contempt. **AFFIRMED.**

Eric D. Puryear and Eric S. Mail of Puryear Law, P.C., Davenport, for appellant.

Robert DeKock of DeKock Law Office, P.C., Muscatine, for appellee.

Considered by Bower, C.J., and Vaitheswaran and Schumacher, JJ.

**SCHUMACHER, Judge.**

Jay Senatra appeals the district court's denial of his application for rule to show cause, claiming his former wife, Amy Senatra, was in contempt for denying him parenting time with their children. Under the specific facts contained in this record, we find the court did not abuse its discretion by finding Amy did not act willfully or with a bad or evil purpose. We deny Amy's request for appellate attorney fees. We affirm the decision of the district court.

## I. Background Facts & Proceedings

Jay and Amy were formerly married. They have two children, G.E.S., born in 2004, and E.C.S., born in 2009. On December 9, 2015, the parties entered into a stipulated decree of dissolution that was approved by the district court. The decree provided the parties would have joint legal custody and joint physical care. The decree set out a schedule where the children lived with one parent for two days, the other parent for the next two days, and the parents would alternate weekends. The parents agreed this schedule was not working for the children, and they informally agreed to exchange the children once a week on Sundays. On the week a parent did not have the children, there was a mid-week visitation on Wednesday evening.

On Tuesday, August 4, 2020, the children were spending the week at Jay's house. G.E.S., who was then fifteen years old, stated that she got into an argument with Jay about her cell phone. He got angry with her, hit her on the head, and kneed her in the side. He also broke her school-supplied laptop. E.C.S., who was then ten years old, observed Jay striking G.E.S. The children had midweek visitation with Amy the next day, August 5, and they told her about the

events. Amy returned the children to Jay's care and they spent the rest of the week with him. When G.E.S. returned to Amy's house on Sunday, August 9, she said she did not want to go back to Jay's home, stating, "I was scared I was going to get in a lot of trouble and get hurt even more."

The Iowa Department of Human Services (DHS) received a report about the incident, and this was investigated by Natalie Neel-McGlaughlin. She interviewed G.E.S. and E.C.S. separately and found the statements they gave were very similar. The children gave "a lot of detail" about the incident. Neel-McGlaughlin spoke to Jay and his wife, Cate. They denied the incident occurred but agreed G.E.S.'s school laptop was damaged. The report of physical abuse was confirmed by DHS but not placed on the central abuse registry because it was determined to be minor, isolated, and unlikely to reoccur. The report stated, "The injury to the child was non accidental as it was done out of anger. Jay was not in control of his emotions and was physically violent and excessive in his punishment of the child."

E.C.S. continued to spend time with Jay. By November 8, she returned to alternating weeks between Amy's home and Jay's home. G.E.S. spoke to Jay a few times but did not return to his home. Both Amy and G.E.S. stated that Amy encouraged G.E.S. to visit Jay. G.E.S. stated, "I had told her that I did not want to go over there and speak to him."

On October 9, 2020, Jay filed an application for rule to show cause, claiming Amy was in contempt for denying him time with the children. A hearing was held on January 11, 2021. The district court ruled:

Jay has failed to meet his burden to prove beyond a reasonable doubt that Amy withheld visitation with a bad or evil purpose. The children reported to Amy that Jay had struck G.E.S. When allegations of physical abuse are involved, a parent could legitimately fear for the safety of children and be understandably hesitant to return the children to that environment. By September 9, Amy allowed visitation to resume between Jay and E.C.S. This leads the Court to the conclusion that Amy was not seeking to interfere with Jay's visitation for improper reasons but out of caution for the safety of her children. The ongoing lack of visitation between Jay and his 16-year-old daughter is more related to Jay's failure to mend the relationship with his daughter than any contemptuous interference from Amy.

Jay appeals the district court's decision.

## II. Standard of Review

"When a trial court refuses to hold a party in contempt in a dissolution proceeding, our review is not de novo." *In re Marriage of Hankenson*, 503 N.W.2d 431, 433 (Iowa Ct. App. 1993) (citing *In re Marriage of Anderson*, 451 N.W.2d 187, 191 (Iowa Ct. App. 1989)). We consider whether the district court's ruling is supported by "such evidence as could convince a rational trier of fact that the alleged contemnor is guilty of contempt beyond a reasonable doubt." *Den Hartog v. City of Waterloo*, 891 N.W.2d 430, 435 (Iowa 2017) (quoting *Reis v. Iowa Dist. Ct.*, 787 N.W.2d 61, 66 (Iowa 2010)). "The decision of the trial court will not be lightly reversed." *Hankenson*, 503 N.W.2d at 433. For proceedings under Iowa Code chapter 598 (2020), the court "had broad discretion and 'unless this discretion is grossly abused, the [trial court's] decision must stand.'" *See In re Marriage of Swan*, 526 N.W.2d 320, 327 (Iowa 1995) (citation omitted).

## III. Discussion

Jay claims the district court should have determined Amy was in contempt of the parties' dissolution decree. He states that she failed to abide by the joint

physical care arrangement. He points out that Amy did not seek a modification of the terms of the parties' joint physical care arrangement, but instead unilaterally did not return the children to his care.[1] He states the court abused its discretion by not finding Amy had a bad or evil purpose in denying him parenting time with the children.[2]

In order to prove contempt, Jay had the burden to show Amy "had a duty to obey a court order and willfully failed to perform that duty." *See Ary v. Iowa Dist. Ct.*, 735 N.W.2d 621, 624 (Iowa 2007). "If the party alleging contempt can show a violation of a court order, the burden shifts to the alleged contemner to produce evidence suggesting the violation was not willful." *Id.* "However, the person alleging contempt retains the burden of proof to establish willfulness beyond a reasonable doubt because of the quasi-criminal nature of the proceeding." *Id.*

Evidence of willfulness "requires evidence of conduct that is intentional and deliberate with a bad or evil purpose, or wanton and in disregard of the rights of others, or contrary to a known duty, or unauthorized, coupled with an unconcern whether the contemner had the right or not." *Id.* (citation omitted). "There are two ways in which the contemner may show that a failure to comply with a court order

---

[1] Amy testified that she contacted an attorney to begin modification proceedings. The record does not show Amy filed a modification petition. Jay filed a petition to modify physical care, visitation, and child support at the same time as the contempt application. Amy counterclaimed, seeking a modification of physical care, child support, and spousal support.

[2] In support of his argument, Jay testified about a conversation between Amy and G.E.S. that he overheard where Amy made a statement about having Jay murdered and dismembered. Amy did not deny the conversation. She stated that she was joking but conceded the statements were a mistake. Although the conversation was recorded by Jay and testified to by both parties, the recording was not admitted as an exhibit on the record.

was not willful: (1) the order was indefinite; or (2) the contemner was unable to perform the act ordered." *Christensen v. Iowa Dist. Ct.*, 578 N.W.2d 675, 678 (Iowa 1998).

A party may fail to follow a court decree, but "may not have acted with the willfulness required to support a finding of contempt." *Farrell v. Iowa Dist. Ct.*, 747 N.W.2d 789, 792 (Iowa Ct. App. 2008). "[T]he trial court may consider all the circumstances, not just whether a willful violation has been proven in deciding whether to impose punishment for contempt." *In re Marriage of Jones*, No. 17-1113, 2018 WL 2725371, at *1 (Iowa Ct. App. June 6, 2018). "[A] trial court is not required to hold a party in contempt even though the elements of contempt may exist." *Swan*, 526 N.W.2d at 327.

In *Jones*, a dissolution decree provided the mother would have physical care of the parties' child but, following an argument with the mother, the seventeen-year-old child lived with the father because she refused to return to the mother's home. 2018 WL 2725371, at *1. The Iowa Court of Appeals stated:

> This is not a case of one parent refusing to provide the other with access to their child; the conflict at issue was clearly between mother and daughter, not between the parents, and the living arrangement was a product of the daughter's choice rather than [the father's] will. [The father] did not prevent the daughter from returning to [the mother's] home or discourage her from doing so. Even if his acquiescence could be considered intentional and deliberate, his reason for allowing the child to stay in his home—his fear that she would "run" if he refused her request—does not evince a bad or evil purpose.

*Id.* (footnote omitted). The court concluded that the district court "did not grossly abuse its discretion in declining to find [the father] in contempt." *Id.* The court noted, "The present situation points out the limitations of the court system in

solving a family's problems." *Id.* (quoting *In re Marriage of Ruden*, 509 N.W.2d 494, 496 (Iowa Ct. App. 1993)).

We determine the present situation is similar to that found in *Jones* because G.E.S.'s refusal to attend visits with Jay is not due to the actions of Amy, but rather due to Jay's physical discipline of G.E.S., which resulted in a confirmed abuse report. The district court found, "It is clear from the testimony offered that Jay has made little effort to repair the relationship with G.E.S. preferring instead to blame Amy for failing to require G.E.S. to resume visitation with him." The court also stated, "The ongoing lack of visitation between Jay and his 16-year-old daughter is more related to Jay's failure to mend the relationship with his daughter than any contemptuous interference from Amy." Amy testified that she encouraged G.E.S. to visit Jay. G.E.S. also testified that Amy encouraged her to visit her father. G.E.S.'s testimony shows she did not want to visit Jay or speak to him.

Additionally, even if Amy acquiesced in G.E.S.'s decision not to visit Jay, under these specific facts, her reason "does not evidence a bad or evil purpose." *See Jones*, 2018 WL 2725371, at *1. DHS issued a confirmed report that Jay physically abused G.E.S. G.E.S. stated, "I was scared I was going to get in a lot of trouble and get hurt even more," if she returned to Jay's home.

We do not lightly reverse a district court decision refusing to find a party in contempt. *Hankenson*, 503 N.W.2d at 433. The court "had broad discretion and 'unless this discretion is grossly abused, the [trial court's] decision must stand.'" *Swan*, 526 N.W.2d at 327 (citation omitted). We conclude the district court did not abuse its discretion. We caution that the lack of finding of contempt should not be interpreted as the green light to indefinitely suspend visitation.

**IV.    Attorney Fees**

Amy seeks attorney fees for this appeal.  Section 598.24 provides that a party who has been found in contempt may be required to pay the opposing party's attorney fees.  The section "does not permit courts to award attorney fees to a party defending against a contempt action."  *In re Marriage of Shaman*, No. 14-0410, 2014 WL 7343748, at *2 (Iowa Ct. App. Dec. 24, 2014).  Amy does not cite and we have not found statutory authority permitting an award of attorney fees in this case.  *See id.*  We deny Amy's request for appellate attorney fees.

We affirm the decision of the district court.

**AFFIRMED.**